IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

BRIAN A. DUCKSWORTH,

                Plaintiff,                    OPINION AND ORDER

v.

                                                  23-cv-567-wmc

AUSTIN KINAS,

                Defendant.

---

      Plaintiff Brian A. Ducksworth, representing himself, filed a complaint under 42 U.S.C. § 1983, claiming that Correctional Officer Austin Kinas violated his civil rights. (Dkt. #1.) The court granted plaintiff leave to proceed with a First Amendment retaliation claim and Eighth Amendment claim against that defendant for allegedly confiscating and breaking plaintiff's property, as well as hitting him with a cell door after he learned plaintiff had filed complaints against him. (Dkt. #11.) Defendant moved for summary judgment on plaintiff's claims. (Dkt. #26.) For the reasons explained below, the court will grant defendant's motion in part and deny defendant's motion in part.

UNDISPUTED FACTS[1]

      Plaintiff Brian A. Ducksworth was an inmate at Jackson Correctional Institution ("JCI") from June 1 to July 19, 2023. (Def.'s Reply to Pl.'s Resp. to Def.'s Proposed Findings of Fact ("PFOF") (dkt. #41) ¶ 1.) He was then transferred to Oshkosh Correctional Institution ("Oshkosh"), where he remains today. (*Id.*) Defendant Austin

---

[1] Unless otherwise noted, the court finds the following facts undisputed for the purposes of summary judgment. The facts are drawn from the parties' proposed findings of fact and responses, as well as the underlying evidentiary record where appropriate.

Kinas is a Corrections Officer at JCI and worked in the unit where Ducksworth was placed while at JCI. (*Id.* at ¶ 2.)

### A. Plaintiff's First Inmate Complaint

Ducksworth filed an inmate complaint against Officer Kinas on June 8, 2023, stating that Officer Kinas was "disrespectful and hostile toward him for no apparent reason" during a previous interaction in the unit. (PFOF (dkt. #41) ¶ 8.) Inmate Complaint Examiner ("ICE") Jodi Dougherty notified Ducksworth that she received his complaint on June 8, 2023. (*Id.* ¶ 9.) After completing her investigation of the incident, she responded in writing to the complaint on June 16, 2023. (PFOF (dkt. #41) ¶ 12.)

ICE Dougherty found that Officer Kinas's supervisor "received requests from [inmate] Ducksworth and said she would talk with [Ducksworth,] . . . then follow up and address his concerns with CO Kinas." (Dkt. #29-4, at 2.) In her written disposition of the complaint, ICE Dougherty stated that she only contacted Officer Kinas's supervisor and another sergeant that witnessed the interaction as part of her investigation. (*Id.*) Officer Kinas declares under oath that: ICE Dougherty never contacted him directly as part of her investigation into the June 8 complaint; and that he was only made aware of Ducksworth's June 8 inmate complaint against him by this lawsuit. (Kinas Decl. (dkt. #30) ¶¶ 13-14.) On the other hand, Ducksworth maintains a jury could reasonably infer Officer Kinas knew of the complaint given ICE Dougherty's representation that Officer Kinas's supervisor would speak to him about the incident. (Ducksworth Decl. (dkt. #37) ¶ 16.) Regardless, ICE Dougherty ultimately recommended dismissal of the complaint, which was affirmed after Ducksworth appealed, and no disciplinary action was taken

2

against Officer Kinas. (PFOF (dkt. #41) ¶¶ 12-13.)

### B. Search of Plaintiff's Cell and Plaintiff's Second Complaint

Two days after Ducksworth filed the June 8 complaint, on June 10, 2023, Officer Kinas conducted a search of Ducksworth's cell under JCI's random monthly search policy. (*Id*. ¶¶ 18-19.) Officer Kinas cannot recall whether another officer or he chose the three cells that were randomly searched that day. (Kinas Decl. (dkt. #30) ¶ 20.) During the search, Officer Kinas confiscated a few items from Ducksworth that he suspected were contraband; then he issued Ducksworth a disciplinary conduct report for Unauthorized Transfer of Property and Possession of Contraband. (PFOF (dkt. #41) ¶ 24; Dkt. #29-11, at 1; Kinas Decl. (dkt #30) ¶ 35.) After a hearing in which Ducksworth was found guilty of such conduct, JCI disciplinary records indicate that one item—a pair of workout gloves—were returned to Ducksworth because he had a valid receipt for them, although Ducksworth represents that he never received them. (Dkt. #29-11 at 3; Ducksworth Decl. (dkt. #37) ¶¶ 5-6.) Ducksworth also declares that Officer Kinas broke a pair of his headphones while searching his cell. (Ducksworth Decl. (dkt. #37) ¶ 11.)

Later that day, on June 10, 2023, Ducksworth filed a second inmate complaint against Officer Kinas stating that "he broke [his] headphones during a cell search." (Dkt. #29-5, at 11.) He further claimed in the complaint that Officer Kinas "searched [his] cell after [he] filed a complaint against him." (*Id*. at 11-12.)

On June 16, 2023, the same day that she actually responded to Ducksworth's first complaint about Officer Kinas, ICE Dougherty also responded to this second complaint. (*Id.* at 2.) ICE Dougherty also explained that she had not started her investigation into

3

the June 8 complaint before the cell search occurred on June 10, so no prison official outside of herself knew about the June 8 complaint before June 10. (*Id.*) Specifically, in her written disposition, she stated: "prior to the . . . submission of this complaint [on June 10, 2023], [she] did not speak to [Kinas's supervisor], CO Kinas or any other staff person regarding his previous complaint . . . Therefore, unless [inmate] Ducksworth told CO Kinas [that] he submitted the complaint, his claim of retaliation cannot be substantiated." (*Id.*) In general, inmate complaint examiners must keep a complaint confidential, except to the degree necessary to investigate the complaint. Wis. Admin. Code §§ DOC 310.16(1)-(2). Ducksworth does not represent on the record that he ever told Officer Kinas about his June 8 complaint any time before the cell search on June 10.

After June 10, ICE Dougherty did contact Officer Kinas directly to investigate the *second* complaint relating to the allegation that Officer Kinas broke Ducksworth's headphones. (Dkt. #29-5, at 2.) Ultimately, ICE Doughtery recommended dismissal of the second complaint due to insufficient evidence to support the allegations. (*Id.*) ICE Dougherty's recommendation of dismissal was followed at all levels of complaint appeal and review, and no discipline was taken against Kinas. (*Id.* at 9.)

### C. Door Incident and Plaintiff's Subsequent Medical Treatment

A few weeks later, on the morning of July 1, 2023, Officer Kinas had been speaking to Ducksworth's cellmate, Jonathan Cole, about picking up his bedding from the laundry after Cole returned from disciplinary segregation. (PFOF (dkt. #41) ¶¶ 43-44.) After consulting the laundry department about the status of the bedding, Officer Kinas

4

approached Cole and Ducksworth's cell to let Cole know that the bedding was ready for pickup. (*Id*. ¶ 44.) While Officer Kinas stated that he could see Cole through the window of the cell as he approached, he declares that he could *not* see Ducksworth, who he says was standing near the outlets and trashcan closest to the door, which is not an area visible through the cell window. (Kinas Decl. (dkt. #30) ¶ 42.) In contrast, Ducksworth declares that he was sitting at a desk visible through the cell window. (Ducksworth Decl. (dkt. #37) ¶ 38.)

Officer Kinas then opened the wooden door to the cell, but did not need to push hard to open it because it is light. (PFOF (dkt. #41) ¶ 51.) Even so, Officer Kinas admits that he accidentally, gently hit Ducksworth's shoulder as he opened the door and immediately apologized to Ducksworth, explaining that he had not seen him as he approached and he hit him by accident. (Kinas Decl. (dkt. #30) ¶ 44; PFOF (dkt. #41) ¶¶ 53-54.)

Again, in contrast, Ducksworth declares that Officer Kinas forcefully opened the door and hit him in the head. (Ducksworth Decl. (dkt. #37) ¶ 1.) Cole also attests that Officer Kinas hit Ducksworth in the head when he opened the door. (Cole Decl. (dkt. #39) ¶ 1.) Ducksworth also attests that immediately after the incident, he was dizzy and in pain. (Ducksworth Decl. (dkt. #37) ¶ 29.) Within about an hour of the incident, Ducksworth went to the officer station and requested to go to the Health Services Unit. (PFOF (dkt. #41) ¶¶ 65-66.) He saw the nurse later that day and reported pain after being hit on the head by the door. (*Id.* ¶ 70.)

He declares that he also reported bruising and swelling on his head when he saw the

nurse. (Ducksworth Decl. (dkt. #37) ¶ 29.) However, the nurse's report states, "patient does not have a bump, no bruising. Neuro check was done and no visual disturbance, no dizziness. Patient does state that he has a headache." (Dkt. #29-1, at 14.) Ducksworth's vital signs and neurological assessment were also normal and within normal limits; and the report does not indicate that Ducksworth had lost consciousness at any time that day. (*Id.*, at 12-14; Wheatley Decl. (dkt. #32) ¶ 9.) Instead, Ducksworth was diagnosed with "altered comfort," then given ice and acetaminophen. (Dkt. #29-1, at 14.)

A few days later, on July 4, 2023, Ducksworth returned to HSU, complaining of headaches. (Dkt. #29-1, at 11.) The nurse's notes state as follows: "He has had a headache off and on since the incident[.] The swelling has gone down but he still has one area that causes pain when touched. Discussed concussion s[ymptoms] and how to treat. . . . He was given Tylenol to continue to use for the headache[.] He [h]as no neuro deficits noted." (*Id.*) At this same appointment, Ducksworth declares the nurse diagnosed "a mild concussion." (Ducksworth Decl. (dkt #37) ¶ 20.) The diagnosis in the nurse's report, however, was again "altered comfort," as well as "potential altered neuro status." (Dkt. #29-1, at 11.) Otherwise, Ducksworth's neurological assessment and vital signs were once more reported as normal. (*Id.*; Wheatley Decl. (dkt. #32) ¶ 10.)

Shortly after, on July 19, 2023, Ducksworth was transferred to Oshkosh Correctional Institution. (PFOF (dkt. #41) ¶ 76.) There, he continued to visit the HSU periodically and complain of headaches, and he reports still having headaches. (PFOF (dkt. #41) ¶¶ 77, 81, 86, 90; Ducksworth Decl. (dkt. #37) ¶ 42.) In each visit in the record, Ducksworth was given ibuprofen and/or acetaminophen to treat, and his

6

neurological assessments and vital signs remained normal. (PFOF (dkt. #41) ¶¶ 77, 81, 86, 90; Wheatley Decl. (dkt. #32) ¶¶ 12-15.)

OPINION

Summary judgment is appropriate if the moving party shows that "there is no genuine dispute as to any material fact[,] and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). If the moving party meets this burden, then the nonmoving party must provide evidence on which the jury could reasonably find for the nonmoving party to survive summary judgment. *Trade Fin. Partners, LLC v. AAR Corp.*, 573 F.3d 401, 406-07 (7th Cir. 2009). In reviewing the evidence, "the court must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000).

I.  **First Amendment Retaliation Claim**

To prevail on a claim for relief under 42 U.S.C. § 1983, a plaintiff must establish that someone deprived him of a right secured by the Constitution or the laws of the United States, and whoever deprived him of this right was acting under the color of state law. *D.S. v. E. Porter Cnty. Sch. Corp.*, 799 F.3d 793, 798 (7th Cir. 2015). Here, plaintiff alleges that defendant violated his First Amendment rights by retaliating against him after he filed two inmate complaints. To prevail on a First Amendment retaliation claim, plaintiff must show that: "(1) he engaged in activity protected by the First Amendment; (2) he suffered a deprivation that would likely deter First Amendment activity in the future; and (3) the

7

First Amendment activity was 'at least a motivating factor' in the [defendant's] decision to take the retaliatory action." *Gomez v. Randle*, 680 F.3d 859, 866 (7th Cir. 2012) (quoting *Bridges v. Gilbert*, 557 F.3d 541, 546 (7th Cir. 2009)).

For the first element, plaintiff's filing of a non-frivolous grievance about conditions of confinement is an activity protected by the First Amendment. *Holleman v. Zatecky*, 951 F.3d 873, 878 (7th Cir. 2020). For the second element, plaintiff alleges that defendant retaliated by subjecting him to a cell search, taking disciplinary action against him, and hitting him with a door. This element is also satisfied because performing a cell search and taking subsequent disciplinary actions against an inmate, as well as physically harming an inmate could dissuade an inmate of ordinary firmness from exercising First Amendment activity. *Manuel v. Nalley*, 966 F.3d 678, 680 (7th Cir. 2020); *McKinley v. Schoenbeck*, 731 F. App'x 511, 515 (7th Cir. 2018).

For the third element, plaintiff "must produce sufficient evidence to show that his protected speech was at least a 'motivating factor" in the defendant's alleged retaliatory . . . actions taken against him." *Kidwell v. Eisenhauer*, 679 F.3d 957, 965 (7th Cir. 2012). Such evidence must show "a causal link between the protected activity and the unlawful retaliation." *Manuel*, 966 F.3d at 680. Plaintiff may demonstrate a "causal link" through "circumstantial evidence. . . includ[ing] suspicious timing, ambiguous oral or written statements, or behavior." *Kidwell*, 679 F.3d at 965 (citation omitted). However, the protected activity could not have motivated the defendant to retaliate unless the defendant knew about the protected activity beforehand. *McGreal v. Vill. of Orland Park*, 850 F.3d 308, 313 (7th Cir. 2017).

8

A defendant's knowledge of plaintiff's grievance against him, without more, is insufficient to demonstrate that defendant had a retaliatory motive or that his legitimate motive is pretextual. *Jones v. Van Lanen*, 27 F.4th 1280, 1284 (7th Cir. 2022). Likewise, the fact that disciplinary action takes place after the plaintiff files a grievance is insufficient to establish a causal inference on its own, especially where significant time has elapsed between the protected activity and the allegedly retaliatory conduct. *See Sweet v. Town of Bargersville*, 18 F.4th 273, 279 (7th Cir. 2021) ("Though there is 'no set legal rule[,] … we typically allow no more than a few days to elapse between the protected activity and the adverse action' . . . to support an inference of retaliatory motive") (citing *Kidwell*, 679 F.3d at 966); *Kidwell*, 679 F.3d at 969 (holding five weeks between protected activity and purported retaliatory act too long to support inference of retaliatory motive.) Nonetheless, the court must consider whether the evidence presented by plaintiff *altogether* allows a reasonable jury to infer that his protected activity was a motivating factor for the retaliatory act. *See Greene v. Doruff*, 660 F.3d 975, 980 (7th Cir. 2011).

Further, a defendant does not violate the First Amendment when he provides a legitimate, non-retaliatory reason for the allegedly retaliatory conduct, and the reason shows that the same conduct would have occurred in the absence of the protected activity. *Winston v. Fuchs*, 837 F. App'x 402, 404 (7th Cir. 2020). Moreover, significant deference is owed to prison official's non-retaliatory justifications for their conduct "when responding to grievances and maintaining order in a volatile environment." *Holleman*, 951 F.3d at 880. Specifically, to rebut defendant's legitimate reason for his conduct, plaintiff must then provide "some evidence that places [defendant's] rationale in dispute," and indicates that

9

the rationale was dishonest or pretextual. *Perkins v. Koehler*, No. 24-1508, 2024 WL 4835249, at *2 (7th Cir. Nov. 20, 2024).

### A. Claim as to Defendant's Conduct during the Cell Search

As to defendant's conduct during the June 10 cell search, plaintiff's claim fails at the third element since there is insufficient evidence in the record for a reasonable jury to find that plaintiff's First Amendment activity was a motivating factor for defendant's allegedly retaliatory acts. Specifically, plaintiff presents no evidence in the record from which a reasonable jury could infer that defendant knew about plaintiff's June 8 inmate complaint against him at the time of the search. To show that defendant knew about the complaint before June 10, plaintiff points only to ICE Dougherty's statement in the resolution of the June 8 complaint that defendant's supervisor would discuss the underlying incident with him. However, the evidence also shows that: (1) ICE Dougherty did not start her investigation into plaintiff's complaint, or speak to defendant's supervisor about the complaint, on or before June 10, 2023; (2) plaintiff does not state he told defendant about the complaint that he filed against him between June 8 and June 10; and (3) inmate complaints are otherwise confidential as a matter of law under Wis. Admin. Code § DOC 310.16(1), such that defendant could not have found out about the complaint on his own. In this way, no jury could reasonably infer under the undisputed facts that defendant knew about plaintiff's protected activity before he searched plaintiff's cell on June 10. Therefore, plaintiff's protected activity could not have been a 'motivating factor' for any of defendant's allegedly retaliatory conduct relating to the cell search, and defendant is entitled to summary judgment on this aspect of plaintiff's retaliation claim. *McGreal*, 850

F.3d at 313.

### B. Claim as to Defendant Hitting Plaintiff with Cell Door

As to defendant hitting plaintiff with the cell door, drawing all inferences from the record in favor of the plaintiff, he presents sufficient evidence from which a reasonable jury could infer that his complaints were a 'motivating factor' for defendant's retaliatory acts, such that this aspect of this claim must proceed to trial.[2] First, a reasonable jury could infer that defendant knew about the June 8 complaint by July 1, as the record showed his supervisor planned to discuss the underlying incident with him. Second, the record plainly shows that defendant knew about the June 10 complaint, since the complaint examiner contacted him directly about that complaint during her investigation. Third, drawing inferences most favorable to plaintiff from the record, only two weeks passed between the end of the complaint investigation and the retaliatory conduct. Considering these circumstances together, a reasonable jury could infer that plaintiff's complaints were a 'motivating factor' for defendant to hit plaintiff with the door, such that there is a triable issue of fact. *Greene*, 660 F.3d at 980. Finally, though defendant certainly provides a legitimate justification for entering plaintiff's cell, defendant's conduct of hitting plaintiff with the door hard enough to cause significant pain as he did so (accepting plaintiff's version of events at this stage without weighing credibility) has no legitimate penological

---

[2] Defendant argues that plaintiff was not allowed to proceed on the claim that defendant hit him with the cell door in retaliation for filing a grievance against him, and thus, it should not be considered; however, the court's screening order explicitly allowed plaintiff to proceed with this claim. (Dkt. #11, at 2.)

justification such that defendant could have met his burden to rebut plaintiff's prima facie case. *See Winston*, 837 F. App'x at 404. As such, defendant is not entitled to summary judgment, and this aspect of plaintiff's First Amendment retaliation claim shall proceed to trial.

## II. Eighth Amendment Claim

Plaintiff also makes a § 1983 claim that defendant violated his Eighth Amendment right to be free of cruel and unusual punishment by hitting him with a cell door. To proceed with a claim that plaintiff suffered constitutional harm under § 1983, plaintiff must put forth sufficient evidence in the record to show that he suffered a legally cognizable injury. *Lord v. Beahm*, 952 F.3d 902, 905 (7th Cir. 2020) (holding that one instance of minor cuts is not cognizable injury); *Douglas v. Schwartz-Oscar*, No. 20-3489, 2021 WL 6102971, at *2 (7th Cir. Dec. 22, 2021) (same); *Steinke v. Krueger*, No. 21-2049, 2021 WL 5399873, at *2 (7th Cir. Nov. 18, 2021) (one instance of "fleeting discomfort" not legally cognizable injury.) Here, accepting plaintiff's version of events as true, the injuries that he alleges are legally cognizable—getting hit in the head hard enough to cause significant pain exceeds the severity of a minor cut treatable by a bandage, and headaches that persist for months also exceed one instance of fleeting discomfort.

Turning to the Eighth Amendment, its prohibition of cruel and unusual punishment protects prisoners from conditions of confinement that "involve the wanton and unnecessary infliction of pain" unconnected from any legitimate penological purpose. *Rhodes v. Chapman*, 452 U.S. 337, 346 (1981). "In cases involving the claimed use of excessive force, 'the core judicial inquiry' is 'whether force was applied in a good-faith effort

to maintain or restore discipline, or maliciously and sadistically to cause harm.'" *Outlaw v. Newkirk*, 259 F.3d 833, 837 (7th Cir. 2001) (citing *Hudson v. McMillian,* 503 U.S. 1, 7 (1992). Several factors are relevant to this inquiry, including "the need for an application of force, the relationship between that need and the force applied, the threat reason ably perceived by the responsible officers, the efforts made to temper the severity of the force employed, and the extent of the injury suffered by the prisoner." *Id.* (citations omitted).

"While significant injury is not required, a claim ordinarily cannot be predicated upon a *de minimis* use of physical force. . . . [N]ot every push or shove by a prison guard violates a prisoner's constitutional rights." *DeWalt v. Carter*, 224 F.3d 607, 620 (7th Cir. 2000) (shove by prison guard resulting only in bruising insufficient to show excessive use of force); *Fillmore v. Page*, 358 F.3d 496, 505 (7th Cir. 2004) (incidental bumping resulting in discomfort and sore wrists "not enough to meet the constitutional threshold for excessive force"). Though it is not the only factor considered in an Eighth Amendment claim, "the extent of injury is relevant to the Eighth Amendment inquiry because it provides some indication of the amount of force applied." *McCottrell*, 933 F.3d at 664.

Here, drawing all reasonable inferences from the record in the light most favorable to plaintiff, he has alleged sufficient facts such that a reasonable jury could find for him on his Eighth Amendment claim. Plaintiff declares that defendant hit him forcefully, resulting in a bump and bruise on his head, dizziness, and pain, which resulted in prolonged headaches. Given plaintiff's proffered evidence that he was seated at the desk in his cell, making him visible through the cell door, and defendant nonetheless opened the door and hit plaintiff, resulting in the aforementioned injuries, a reasonable jury could infer that

13

such force was *not* applied in "a good-faith effort to maintain" order in the prison, but rather to cause harm to plaintiff. *Outlaw,* 259 F.3d at 237. Because the facts material to plaintiff's Eighth Amendment claim are genuinely disputed, defendant is not entitled to summary judgment, and plaintiff's Eighth Amendment claim will proceed to trial.

### III. Qualified Immunity

Alternatively, defendants argue that they are entitled to qualified immunity on plaintiff's claims. Qualified immunity protects a government official from civil liability when a reasonable officer in his position would have known that his conduct does not violate a clearly established constitutional right. *See Pearson v. Callahan*, 555 U.S. 223, 231 (2009); *Mullenix v. Luna*, 577 U.S. 7, 11 (2015). Constitutional rights are clearly established when existing precedent places the right at issue beyond debate. *See Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011); *Hope v. Pelzer,* 536 U.S. 730, 741 (2002).

At the time of defendant's alleged actions, it was clearly established in this circuit that a plaintiff has a constitutional right not to be physically harmed due to his protected First Amendment activity. *McKinley,* 731 F. App'x at 515. At the same time, the constitutional prohibition on physically harming an inmate absent any legitimate penological justification was clearly established. *Outlaw*, 259 F.3d at 237.

To determine whether a defendant's actions violated clearly established law, the court must again view the evidence at summary judgment in the light most favorable to the nonmovant and may not weigh evidence or resolve disputed issues in favor of the moving party. *Tolan v. Cotton*, 572 U.S. 650, 657 (2014). Further, the court should deny

a motion for summary judgment based on qualified immunity when "the facts, taken in the light most favorable to the plaintiff, create a genuine dispute about whether the defendants' actions violated a clearly established constitutional right." *Estate of Clark v. Walker*, 865 F.3d 544, 550 (7th Cir. 2017). In other words, "when the qualified immunity inquiry cannot be disentangled from disputed facts, the issue cannot be resolved without a trial." *Gonzalez v. City of Elgin*, 578 F.3d 526, 540 (7th Cir. 2009).

Because the question of defendant's qualified immunity is so entangled with disputed material facts as to liability on both of plaintiff's remaining claims, the court must deny defendants' motion for summary judgment on this question as well, at least until better resolved at trial. *Id.* Indeed, the entire course of conduct underlying plaintiff's claims is disputed by the parties, particularly as to whether defendant knew about plaintiff's first grievance when he opened the cell door, what he saw before he opened the cell door, the extent of force used to do so, and the extent of plaintiff's actual injuries. Accordingly, the court must also deny defendant's motion for summary judgment as to qualified immunity until material factual disputes are resolved at trial. *Id.*

ORDER

IT IS ORDERED that:

1) Defendant's motion for summary judgment (dkt. #26) is GRANTED in part on plaintiff's First Amendment retaliation claim relating to defendant's conduct during the cell search.

2) Defendant's motion for summary judgment (dkt. #26) is DENIED as to:

   a) Plaintiff's First Amendment retaliation claim relating to defendant's conduct opening plaintiff's cell door.

      b) Plaintiff's Eighth Amendment excessive force claim.

3) Defendant's motion for a stay pending summary judgment (dkt. #48) is DENIED as moot.

4) The deadline for all Submissions for Final Pretrial Conference is EXTENDED to January 30, 2026, and the responses shall be due on February 6. 2026.

5) Plaintiff is given LEAVE TO AMEND his pre-trial filings (Dkts. ##44-47) to reflect that *only* the claims related to the cell door incident, and *not* the cell search, shall proceed to trial.

Entered this 15th day of January, 2026.

                              BY THE COURT:

                              /s/
                              _____
                              WILLIAM M. CONLEY
                              District Judge